NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-5055

ROBERT O. MUDGE,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED: November 10, 2005

_____

Before SCHALL, GAJARSA, and PROST, <u>Circuit Judges</u>.

PER CURIAM.

DECISION

Robert O. Mudge appeals from the final decision of the United States Court of Federal Claims that granted summary judgment in favor of the United States and dismissed his back pay claim seeking a 12% pay differential and pay retention based upon his employment with the Federal Aviation Administration ("FAA" or "agency") in the

states of Alaska and Nevada.  Mudge v. United States, 63 Fed. Cl. 363 (2004).  We affirm.

## DISCUSSION

### I.

The pertinent facts are not in dispute.  Prior to his retirement from federal service, Mr. Mudge was employed as a maintenance mechanic with the FAA.  In April of 2000, acting pro se, he filed suit in the Court of Federal Claims, alleging that he was entitled to back pay based on two periods of employment with the agency.  These periods of employment covered his transfer from Nevada to Alaska and then his reassignment back to Nevada.  Mr. Mudge first asserted that he was entitled to a 12% pay differential for the period from January 1, 1990, until March 21, 1992, when he was stationed in King Salmon, Alaska.  Second, he asserted that he was entitled to pay retention from March 22, 1992, when he was reassigned from King Salmon, Alaska, to Reno, Nevada, to December 31, 1995, when he retired.  During both of these periods, Mr. Mudge was paid at the rate of wage grade 11, step 5.

Mr. Mudge's claim for a pay differential was based upon the argument that, over and above the higher rate of pay its wage-grade employees in Alaska received, the FAA was required to pay all of its wage-grade employees in Alaska the 12% pay differential listed in Appendix V of the Federal Personnel Manual ("FPM") System, Federal Wage System, Supplement 532-1.  At the same time, Mr. Mudge argued that, following his reassignment to Nevada in March of 1992, he was entitled to retention of the higher rate of pay that he had received while he was in Alaska.

Ruling on cross-motions for summary judgment, the Court of Federal Claims held that, under the applicable statutes and regulations, Mr. Mudge was entitled to neither a pay differential nor pay retention. The court therefore granted summary judgment in favor of the United States on both parts of Mr. Mudge's back pay claim and dismissed his complaint. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

II.

We review the Court of Federal Claims' grant of summary judgment de novo. Scott Timber Co. v. United States, 333 F.3d 1358, 1364 (Fed. Cir. 2003). Summary judgment in the Court of Federal Claims is appropriate if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Court of Federal Claims Rule 56(c). As noted above, the pertinent facts are not in dispute. Under these circumstances, the question of whether the Court of Federal Claims erred in granting summary judgment turns on whether the court erred in interpreting the pertinent statutes and regulations, an issue of law that we review de novo. Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000).

III.

We turn first to the pay differential issue. The Court of Federal Claims rejected Mr. Mudge's argument that he was entitled to a 12% pay differential during the period that he worked in Alaska. It did so on the ground that the Office of Personnel Management ("OPM") has never approved a special wage rate for FAA employees in Alaska. Mudge, 63 Fed. Cl. at 367-68. That ruling was correct.

The Prevailing Rate Systems Act, 5 U.S.C.A §§ 5341-5349 (2005), requires that OPM issue regulations providing for the establishment and development of wage schedules and rates, for both prevailing wage employees paid under regular wage schedules and rates, and for prevailing wage employees paid under special wage schedules and rates. 5 U.S.C. § 5343(c) (2000). As far as special wage schedules and rates are concerned, as of 1992 when Mr. Mudge was transferred from Alaska to Nevada, OPM had promulgated a regulation codified at 5 C.F.R. § 532.251. That regulation provided that "[a] lead agency, with the approval of [OPM]," based on certain findings, could "establish special rates or special schedules for use within an area for specific occupations which are critical to the mission of a [f]ederal activity." 5 C.F.R. § 532.251 (1992). Among the findings that would permit the establishment of special rates were the findings that serious recruitment and retention problems existed for an agency or that wage rates on the regular authorized schedule were inadequate for the recruitment and retention of qualified employees. Id.

Pursuant to section 532.251, in FPM Supplement 532-1, Subchapter S11, OPM established "special wage schedules and practices applicable to specific occupations or positions under the Federal Wage System." FPM Supplement at 11-1. The FPM Supplement later became known as the Operating Manual, Federal Wage System. In the 1996 Update to the Operating Manual, OPM added Subchapter S12, Special Rates or Rate Ranges under the Federal Wage System. The purpose of Subchapter S12 was "to establish special rates and rate ranges for Federal Wage System employees based on recruitment or retention difficulties." Id. at 12-1. The phrase "special rate range" was defined in that subchapter as "a rate or range of rates authorized by OPM for

recruitment or retention purposes under subchapter IV of chapter 53 of title 5, United States Code, and § 532.251 of part 532 of title 5, Code of Federal Regulations." Id.

It is undisputed that the FAA has never experienced difficulties in recruiting that would require a special pay schedule for Alaska. Consequently, the FAA never requested, and OPM never approved, special wage rates for the agency's employees in Alaska. Thus, there was no authority under which the FAA could have paid Mr. Mudge the 12% pay differential to which he claimed he was entitled. The Court of Federal Claims did not err in rejecting Mr. Mudge's pay differential claim.

As noted above, Mr. Mudge argues, however, that during his service in Alaska, he was entitled to the 12% pay differential specified in Appendix V of FPM Supplement 532-1. We do not agree. The 12% differential wage rate of Appendix V only applies to certain agencies: the Department of Defense, the Department of the Interior, the National Park Service, and the Fish and Wildlife Service. When the Prevailing Rate Systems Act was enacted in 1972, these agencies already were paying their Alaska employees at the 12% differential wage rate. OPM allowed those agencies to continue that practice after the Act was passed. See Mudge, 63 Fed. Cl. at 367. As the Court of Federal Claims pointed out, Appendix V itself states: "This appendix does not include special schedules or rates established by OPM under the Federal Wage System." See id. (quoting FPM Supplement, App. V at V-1). The "Special 12 percent Differential Wage Rate for Alaska" documented in Appendix V was not established pursuant to 5 C.F.R. § 532.251(b). The FAA therefore was not required to pay its employees that differential rate under 5 C.F.R. § 532.251(c).

IV.

Although he did not receive the special 12% pay differential, while he was working in Alaska, Mr. Mudge was paid at a higher rate of pay than he had been paid in Nevada before he went to Alaska. Pursuant to the authority granted in 5 U.S.C. §§ 5361-5366, OPM has promulgated regulations providing for grade and pay retention in certain circumstances and with certain exclusions. 5 C.F.R. Part 536 (1992). Before the Court of Federal Claims, Mr. Mudge, who at all pertinent times was employed at the wage grade 11, step 5 level, based his pay retention claim on 5 C.F.R. § 536.104(a)(5) (1992), which provides: "Pay retention shall apply to any employee whose rate of basic pay would otherwise be reduced . . . [a]s a result of the placement of an employee in a position in a lower wage area or in a position in a different pay schedule." However, an exclusion to grade and pay retention states that "an employee serving under a temporary promotion or temporary reassignment may not retain a grade or rate of basic pay held during the temporary promotion or temporary reassignment." 5 C.F.R. § 536.105(b) (1992). The Court of Federal Claims ruled that the section 536.105(b) exclusion to rate retention applied to Mr. Mudge because, while he was in Alaska and was paid at the higher wage rate, he was on a temporary reassignment, as defined in 5 C.F.R. § 536.102 (1992). Mudge, 63 Fed. Cl. at 368. The court therefore rejected Mr. Mudge's pay retention claim. Id. We see no error in the court's decision. The undisputed facts make it clear that Mr. Mudge's tour of duty in Alaska was a temporary reassignment, so that Mr. Mudge was not entitled to retain the higher rate of pay he received in Alaska when he returned to Nevada.

For the forgoing reasons, the decision of the Court of Federal Claims granting summary judgment in favor of the United States and dismissing Mr. Mudge's back pay claim is affirmed.

No costs.